**Franklin BROTHERS, Petitioner-Appellant,**

v.

**UNITED STATES of America, Respondent-Appellee.**

**No. 24082.**

United States Court of Appeals, Ninth Circuit.

Sept. 21, 1970.

Franklin Brothers, in pro. per.

Stan Pitkin, U. S. Atty., John M. Darrah, Asst. U. S. Atty., Seattle, Wash., for respondent-appellee.

Before BARNES, CARTER and HUFSTEDLER, Circuit Judges.

BARNES, Circuit Judge:

This is an appeal from the denial of a petition for a writ of coram nobis. That remedy was sought to be utilized because petitioner's plea of guilty to one count of possession of heroin was entered on April 16, 1951, and he has long since served his sentence of thirteen months. He was freed, only to again be reincarcerated for continued narcotic violations.

In 1951, petitioner was "hooked" on heroin. He was convicted in 1951, prior to his federal plea, in a Justice Court of King County, Washington, of the crime of being a habitual user of narcotics.

Brothers desired help to rid himself of his habit. Appellant himself states that his Justice Court sentence was six months, but "the State had no facility

---

for the treatment of drug addicts." (App.Br. pp. 3, 4) But Brothers says he was told that "if he subjected himself to an approved program," his state sentence would be suspended.

This, Brothers swears (p. 23) led to his guilty plea to the federal indictment. His attorney (now deceased) told Brothers (App.Br. p. 4) "that he should plead affirmatively to the indictment presented in furtherance of perpetrating the main objective, i. e., civil commitment," inasmuch as the proceeding was a "mere formality" to that objective.

Brothers also swears his attorney told him, when he asked said attorney why he should plead guilty, it was "in order for me to receive the desired help I so desperately needed" (C.T. 24); "that this was the only way that he could possibly see whereby I would get the benefit of expert treatment, and hence achieve my goal of getting cured of my drug addiction problem." (C.T. 24) As to the advice of attorneys, see Devers v. People, 422 F.2d 1263, 1264 (9th Cir. 1970).[1]

Brothers next states under oath that he received precisely what he had bargained for—thirteen months of hospital treatment for his drug addiction. (C.T. 25)

In the district court appellant alleged two errors:

■ I. That the indictment was defective on its face because bottomed on illegally seized evidence.

(1) The search and seizure error could not be raised by alleging a defective indictment.

(2) Brothers does not allege that his plea was motivated by the alleged illegal evidence; in fact he asserts that he knew of the inadmissibility of the evidence, but that he decided to plead guilty anyway. (C.T. p. 24, Para. No. 6)

■ II. That petitioner did not understand the nature of the offense or the consequence of the plea.

The district judge hearing the coram nobis petition held that a review of the transcript of the proceedings in the federal court at time of sentence conclusively established this second point to be without merit. After an examination of the complete transcript, both of the plea and sentencing, we agree that the plea was both voluntarily and intelligently made and entered.

"The voluntariness of Brady's plea can be determined only by considering all the relevant circumstances surrounding it (citing cases) * * *"

Brady v. United States, 397 U.S. 742, 749, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 et seq.; Cf. also: McMann, Warden v. Richardson, et al., 397 U.S. 759, 769–774, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); Parker v. North Carolina, 397 U.S. 790, 796–798, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970).

The district court judge asked both the then defendant and his attorney as to the voluntariness of the plea, and their understanding of the nature of the charge, and the consequences of a guilty plea.

"In determining these questions the court is not required to follow any particular ritual, and it is not necessary that the court personally explain to the defendant the nature of the charge. Nor does the rule require the entry of a formal finding or recitation to the effect that the plea is made voluntarily with understanding of the nature of the charge." Munich v. United States, 337 F.2d 356, 359–360 (9th Cir. 1964).

It is unbelievable that Brothers, as he now urges, thought he was to receive a civil commitment, and was not to be sen-

---

[1]. "It is, of course, one of an attorney's most valuable functions to persuade his client to take that course, which, to the attorney, in the light of his experience, appears to be the wisest." 422 F.2d, p. 1264.

tenced for a crime, in view of the record before us.[2]

There are other issues raised which likewise have no merit. (a) Petitioner asserted below, but *not* on appeal, that at the time of sentencing he was under the effect "of his narcotic habit." This despite the fact he was arrested on January 11, 1951, and was continuously in police custody until his sentencing on April 16, 1951. (b) Petitioner refers to the court's "dissertation of determining whether or not the plea was voluntarily given" (App.Br. p. 8), and states this was *after* the plea of guilty by petitioner (C.T. 50). He neglects to point out the determination was after plea but *before* the petitioner's plea was *accepted* by the trial judge, or *ordered entered*. (C.T. 51, lines 17–20)

Here we find no deception, coercion or unfairness on the part of the court or the prosecution, nor any ignorance nor inadvertence on the part of the defendant, but a carefully considered and weighed and knowing exercise of judgment by both defendant and his counsel, with full knowledge and realization of what was being done, and why.

Affirmed.

2. Brothers was personally asked by the sentencing judge, as follows:

"COURT: I ask the defendant, have you had an opportunity to consider fully with your counsel his advice in the matter and the consequences of your guilty plea?

"DEFT: I have.

"COURT: *Do you know that the Court could, after hearing you and your counsel and the Government officials as to what they think the facts are, do you understand the Court could impose the same judgment and sentence and just as severe a judgment and sentence as if you had stood trial and if you had been convicted by a jury*" [emphasis added]

"DEFT: I do, your Honor.

"COURT: The Court will not be bound by any recommendations in this case but the Court will consider what you have to say and what your counsel has to say and what counsel speaking for the Government will have to say, do you understand that?

"DEFT: Yes, I do.

"COURT: No matter what anyone might have said to you or offered to you as something that might happen or not happen, the Court is not bound by any statement later, do you understand that?

"DEFT: I do, your honor."

(R.T. 50, line 20—R.T. 51, line 12.)