[Crim. No. 12531. Second Dist., Div. One. Aug. 29, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. GRACEN ISIDORE FUENTES, Defendant and Appellant.

John P. Bruno, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Richard Tanzer, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of conviction of manslaughter (Pen. Code, § 192) and of a violation of section 273a, Penal Code.

In an amended information filed in Los Angeles on April 6, 1966, defendant was charged in count I with having killed Lawrence Victor Cole without malice, on December 17, 1965, and in count II with inflicting on said Lawrence Victor Cole, a child of three years, unjustifiable physical pain and mental suffering (Pen. Code, § 273a.) Defendant pleaded not guilty to the charges and in a court trial was found guilty as charged in each count. A motion for a new trial was denied. Probation was denied. On count II defendant was sentenced to the state prison, with sentence stayed until the completion of sentence on count I and at that time to be permanently stayed as to count II. On count I defendant was sentenced to the state prison. Defendant has appealed from the judgment and has attempted to appeal from the order denying the motion for a new trial.

A résumé of some of the facts is as follows: On December 17, 1965, Mrs. Alice Cole resided with her four children and defendant. Lawrence Victor Cole was a child of Mrs. Cole of

the age of about three years and he resided with Mrs. Cole and defendant. Mrs. Cole was employed and worked from 6 p.m. to 2 a.m. While Mrs. Cole was at work defendant supposedly attended and cared for the four children of Mrs. Cole. On December 17, 1965, Lawrence had been sick and was weak from vomiting. On that night Mrs. Cole left home about 5:30 p.m. and the condition of Lawrence was about the same as it had been for the last two days. Defendant and the children were the only persons in the home when Mrs. Cole left for work. Upon arriving home at about 2:30 a.m. Mrs. Cole looked at Lawrence and observed that he was extremely pale and weak and that his condition was not the same as when she had left in the evening. Mrs. Cole inquired of defendant whether Lawrence had been ill before he was put to bed and defendant said, ''He seemed all right except for type of vomiting that he had done that seemed different''; that the vomit had been green in color—a green mucous. Mrs. Cole inquired of defendant whether he had spanked Lawrence and defendant replied that he had spanked Lawrence with a belt. In about 20 to 30 minutes from the time she arrived home from work, Mrs. Cole hurriedly took Lawrence to a hospital. Lawrence was extremely weak, very wobbly and was having difficulty in talking. On the way to the hospital, in a car driven by a neighbor friend, Lawrence became weaker; he could not hold up his head and was moving his mouth in order to catch his breath. When Mrs. Cole reached the hospital Lawrence died as she was about to enter the doors.

Mrs. Cole got home from the hospital about 5 a.m. and asked defendant to relate exactly what had occurred to Lawrence. Defendant told her that Lawrence had been spanked at about 6:30 or 7 p.m. and had been put to bed at about 8 p.m.

On the morning of December 18 Lawrence had bruises on his back and buttocks which were not there on the morning of the 17th. The day before Lawrence died he could, and did, walk.

About a month before December 17, 1965, Mrs. Cole saw long, narrow bruises on the back, chest and legs of Lawrence. Defendant told Mrs. Cole that he had hit Lawrence with a belt and that he had lost his temper.

A physician, a pathologist medical examiner of the coroner's office, performed a post-mortem examination of Lawrence on December 19, 1965, to ascertain the cause of death. Another doctor worked also at the time in a subordinate

capacity. The cause of death was a laceration of the mesentery and duodenum with massive hemorrhage. The mesentery is a fatty but strong supporting structure of the intestine located in the midportion of the abdomen attached to the spine. The duodenum is the first portion of the small intestine just below the stomach which is supported by the mesentery. There was a fresh tear (within 24 hours of the time of death) of the mesentery and a one-half inch fresh tear of the duodenum. There was nothing to indicate that the injury was of anything but recent origin. The tears caused massive hemorrhaging, and blood was lost in the abdominal cavity. The wound which caused death could not have been self-inflicted, could not have been caused by Lawrence's running into some object. The doctor stated that the injury could have been caused by the infliction of a human fist.

Miss Graham, during the period from September and October of 1965, saw Mrs. Cole leave for work. On one occasion Lawrence was crying and did not want his mother to leave. Miss Graham then saw defendant pick Lawrence up by the hair of his head and carry him through the patio and up the stairs.

Defendant admitted to the police that he had spanked Lawrence about 7 p.m. on December 17, 1965. Prior to placing defendant under arrest Officer Vaughn asked defendant, "May I have the belt, please" and defendant replied, "It is in the adjacent bedroom" and Officer Vaughn inquired if defendant could go get it and defendant did so.

Appellant now asserts that the evidence is insufficient to support the judgment and that he was not fully advised of his constitutional rights and was the victim of an unreasonable search.

We approach the factual issues in this case as an appellate court. (*People* v. *Chavez*, 240 Cal.App.2d 248, 250-251 [49 Cal.Rptr. 425] ; *People* v. *DeJean*, 249 Cal.App.2d 220, 227 [57 Cal.Rptr. 211].) ██ The guilt of appellant and the corpus delicti can be proved by circumstantial evidence. (*People* v. *Camargo*, 130 Cal.App.2d 543, 548 [279 P.2d 194].) The type of injury in this particular case had to be caused by a severe concentrated external blunt force applied to the area of the duodenum and the mesentery. The fatal injury was caused by a force applied to the abdominal area initiated by someone other than Lawrence. The tears occurred before death. It could reasonably be inferred that the force causing death was

974

applied by another. (*People* v. *Camargo, supra,* pp. 548-549.)

■ Appellant was left by the mother with the children when she went to work. No one but appellant was with the children. No one other than appellant and the children was in the apartment when Mrs. Cole returned from work. It can be inferred that appellant had exclusive control over Lawrence during the time the mother was away on the night in question. Appellant resided with Mrs. Cole. It can reasonably be inferred that when Mrs. Cole left for work on December 17, 1965, the condition of Lawrence was not sufficiently grave to result in his death about nine hours later. The boy's condition was different when Mrs. Cole returned home early in the morning hours. Appellant stated to Mrs. Cole that about a month before he had lost his temper and had hit Lawrence with a belt. The evidence is clearly sufficient to warrant the determination that appellant applied the external force which resulted in the death of Lawrence.

■ The credibility of the witnesses is for the trier of fact to determine. (*People* v. *Lyons,* 47 Cal.2d 311, 320 [303 P.2d 329].) The appellant in this case did not testify in his own behalf, nor did he have any witnesses in his behalf.

■ Appellant somehow attempts to contend that Mrs. Cole was an accomplice and that her testimony was not corroborated. First of all, she was not an accomplice. The evidence does not disclose that she violated sections 273a or 192 of the Penal Code. The mere fact that on some occasion or another she might have spanked Lawrence does not necessarily mean that she violated the provisions of sections 273a or 192 of the Penal Code. To be an accomplice one must knowingly, voluntarily, and with common interest unite with the principal offender in the commission of the crime. (*People* v. *Graham,* 191 Cal.App.2d 521, 539 [12 Cal.Rptr. 893] cert. denied 368 U.S. 864 [7 L.Ed.2d 61, 82 S.Ct. 112].) In any event there was evidence to corroborate the testimony of Mrs. Cole even if Mrs. Cole were to be held an accomplice.

■ The belt was properly admitted into evidence. The trial started April 6, 1966, and is governed by the rules of *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361] and *Escobedo* v. *Illinois,* 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758], but not of *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]. Officer Vaughn, on December 23, 1965, after speaking with the post-mortem examining doctor with reference to the results of the

autopsy, went to the residence of Mrs. Cole and first talked with Mrs. Cole. Afterward the officer interviewed appellant; a conversation ensued between the officer and appellant which was not admitted into evidence because appellant had not been fully advised of his constitutional rights. After the talk Officer Vaughn said, "May I have the belt, please." and appellant answered, "It is in the adjacent bedroom" and Vaughn asked appellant if he could get it and appellant did so.

Appellant handed the belt to the officer and he then was placed under arrest. On the way to the station appellant was fully advised of his then constitutional rights. Appellant responded that he understood about his rights. Appellant was asked at the station what time it was when he had spanked the victim and appellant replied that it was about 7 p.m. The last mentioned statement was properly admitted into evidence. (*People* v. *Valencia,* 249 Cal.App.2d 370, 377, 379 [57 Cal.Rptr. 567].)

In any event a statement by appellant that he spanked Lawrence at about 7 p.m. is not a confession in any sense of the word. To be a confession, the accused must implicate himself on each and every element of the crime involved. This he did not do. (*People* v. *Beverly,* 233 Cal.App.2d 702, 712-713 [43 Cal.Rptr. 743].)

It is clear that the first conversation between Officer Vaughn and appellant, which was not admitted into evidence, did not lead to the officer's securing the belt. The belt was secured before any arrest took place. Even if it be assumed that the philosophy of the poison-tree doctrine be pertinent here, the error in receiving the belt into evidence was not prejudicial and was harmless. Certainly without the belt appellant would not have been acquitted. The death was not caused by a belt.

The evidence is clear and convincing that appellant was properly found guilty as charged. There is no reversible error in the record.

The purported appeal from the order denying a motion for a new trial is dismissed.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.